UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

_____
                                            )
GLENDA JIMMO, et al.,                       )
                                            )   No. 5:11-CV-17
                Plaintiffs,                 )
                                            )
        vs.                                 )
                                            )
                                            )
KATHLEEN SEBELIUS, Secretary of             )
Health & Human Services,                    )
                                            )
                Defendant.                  )
_____)

### MEMORANDUM IN SUPPORT OF APPROVAL OF CLASS SETTLEMENT AND NOTICE

**I.      INTRODUCTION**

This case is a class action brought on behalf Medicare beneficiaries against Kathleen Sebelius, the Secretary of Health and Human Services. Plaintiffs allege that the Secretary applied a policy, which Plaintiffs call the "Improvement Standard," that inappropriately denied Medicare coverage. "Improvement Standard" refers to a standard under which Medicare coverage of skilled services is allegedly denied on the basis that a Medicare beneficiary is not improving, without regard to an individualized assessment of the beneficiary's medical condition and the reasonableness and necessity of the treatment, care or services in question. Defendant denies that any such policy exists or was applied to wrongly deny Medicare coverage. On October 25, 2011, this Court denied in part and granted in part the Secretary's motion to dismiss. The case was then stayed and the parties engaged in extensive settlement negotiations. The plaintiffs and defendant

("parties") have now reached a settlement of party and class claims and have executed a Settlement Agreement ("Agreement").[1] The parties jointly seek preliminary approval of the Agreement, approval of notice to the class and scheduling of a final fairness hearing as required by Fed. R. Civ. P. 23(e).

## II.     PROCEDURAL HISTORY

### A.     The Complaint and Motion for Class Certification

On January 18, 2011, plaintiffs filed this case in the District of Vermont alleging that Defendant Kathleen Sebelius has imposed a policy in contravention of the Medicare statute and regulations that denies, terminates, or reduces coverage for Medicare beneficiaries who are not improving. Plaintiffs alleged that this "Improvement Standard" operates as a rule of thumb that prevents the evaluation of a beneficiary's unique condition and individual needs, as required by law. The complaint listed alleged violations of the Medicare statute and regulations, the Administrative Procedure Act, the Freedom of Information Act, and the Due Process Clause of the Fifth Amendment.

The named plaintiffs consisted of five individuals and five organizations proceeding on behalf of their members. Plaintiffs sought an injunction prohibiting the application of the Improvement Standard and ordering the Secretary, *inter alia*, to revise rules, guidelines, or directives that support the Improvement Standard, and to educate employees and entities that render coverage decisions as to the correct approach to coverage decisions, without regard to an Improvement Standard.

Plaintiffs filed a motion for class certification concurrently with the complaint. The class was defined as all beneficiaries of Medicare Parts A, B, or C who have had or will have coverage for health care or therapy services, as an outpatient, in a hospital, in a

---

[1] The proposed Agreement is attached to the Joint Notice Regarding Settlement Agreement (Dkt # 82-1).

skilled nursing facility, or in a home health care setting, denied, terminated, or reduced due to the application of the Improvement Standard, on or after January 1, 2006. Plaintiffs filed an amended complaint naming one additional individual plaintiff and two additional organizational plaintiffs on March 3, 2011.

      B.      Motion to Dismiss

On April 14, 2011, Defendant filed a motion to dismiss the case for lack of jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court heard oral argument on the motion to dismiss on July 14, 2011. Supplemental briefing on the motion to dismiss was filed in August 2011. On October 25, 2011, the Court granted in part and denied in part the Secretary's motion to dismiss for lack of subject matter jurisdiction, allowing five of the six individual plaintiffs and six of the seven organizational plaintiffs to proceed with the case. (Dkt # 56.) The Court dismissed plaintiffs Edith Masterman and the American Academy of Physical Medicine and Rehabilitation for lack of subject matter jurisdiction. The Secretary's motion to dismiss for failure to state a claim was denied without prejudice to a partial refiling on mootness grounds.

Plaintiffs filed a motion for reconsideration of the order to dismiss Ms. Masterman from the case on November 4, 2011. The Court denied that motion on December 23, 2011.

      C.      Settlement Negotiations

On January 10, 2012, the Court granted the first in a series of stipulated motions to stay proceedings to allow time for settlement negotiations. The parties then began extensive, arm's-length negotiations, including in-person meetings and conference calls.

The parties met in person in Washington, D.C. on February 28, 2012 and April 18, 2012. They met in Boston, Massachusetts on June 6, 2012. Additional telephonic meetings were held between the parties throughout the settlement process and numerous drafts of a settlement in principle and the Agreement were exchanged. The many meetings were necessary due to the complex nature of the issue and the numerous parts of the Medicare program affected.

On May 9, 2012, the Court granted a stay until such time as a status conference could be held. A status conference was held on June 20, 2012, and the parties agreed to inform the court if they had reached a settlement in principle in one month. On July 20, 2012, the parties filed a joint status report stating that they had reached a settlement in principle which would be reduced to a written settlement agreement by October 1, 2012. After additional extensions the parties filed that proposed agreement on October 16, 2012. (Dkt # 82-1.)

### III.   SUMMARY OF THE SETTLEMENT AGREEMENT

#### A.   Injunctive Relief

In exchange for releasing and discharging the Secretary and the United States Department of Health and Human Services (HHS) from any and all claims and causes of action that have been asserted or could have been asserted in this action, the Secretary has agreed to:

- Revise portions of the Medicare Benefit Policy Manual to clarify the coverage standards for the skilled nursing facility (SNF), home health (HH), and outpatient therapy (OPT) benefits when a patient has no restoration or improvement potential but when that patient needs skilled SNF, HH, or OPT services to

4

maintain his or her current condition or to prevent or slow further deterioration, as set forth in the Agreement.

- Engage in a nationwide educational campaign using written materials and interactive forums with providers and suppliers and Medicare contractors and adjudicators to communicate the clarified coverage standards; Develop protocols for reviewing random samples of certain QIC decisions, provide updates to Plaintiffs' Counsel of the results of the sampling, work with the QIC to determine if errors were made and to correct any errors, review up to 100 individual claims brought to CMS' attention by Plaintiffs' Counsel, and meet with Plaintiffs' Counsel to discuss implementation of the Agreement five times on a bi-annual basis.

    Stipulate to the certification of a class pursuant to Fed. R. Civ. P. 23(b)(2) as defined in Section XI of the Agreement;
- Allow certain class members who received or will receive a final and non-appealable denial that is based on a violation of the coverage standards for the SNF, HH, and OPT benefits when a patient has no restoration or improvement potential but when that patient needs skilled SNF, HH, or OPT services to maintain his or her current condition or to prevent or slow further deterioration as set forth in the Agreement up to the date of the end of the educational campaign (which will last up to one year after the approval date of the Settlement Agreement) the opportunity for a re-review of his or her denied claim.

The Agreement also contains dispute resolution procedures to allow either party to initiate steps to resolve alleged noncompliance with any provision of the

Agreement. Nothing in the Agreement modifies, contracts, or expands the existing eligibility requirements for receiving Medicare coverage.

B.  Final Judgment; Continuing Jurisdiction

If, after the fairness hearing, the Court approves the Agreement as fair, reasonable, and adequate, the parties agree that the Court shall direct the entry of final judgment dismissing the action with prejudice pursuant to the terms of the Agreement and Fed. R. Civ. P. 41, except that the Court shall retain jurisdiction for the limited purposes described in Section VI of the Agreement.  The period of continuing jurisdiction will last for either two or three years, the time period dependent on whether the Administrator of CMS issues a CMS Ruling communicating the clarified coverage standards for the SNF, HH, and OPT benefits when a patient has no restoration or improvement potential but when that patient needs skilled SNF, HH, or OPT services to maintain his or her current condition or to prevent or slow further deterioration, which she has the option to do.  During that period, either party may, through counsel, ask the Court to enforce one or more provisions of the Agreement if the party believes that the other party is not complying with the terms of the Agreement.

C.  Attorney's Fees and Costs

The Secretary has agreed to pay reasonable and appropriate attorney's fees, costs and expenses related to work performed by plaintiffs' counsel in the litigation and settlement of this action up until the date that the Court approves the Agreement after a fairness hearing is held.  For work performed by plaintiffs' counsel after that date, the Secretary agrees to pay reasonable and appropriate attorney's fees, costs, and expenses only for the post-approval date work specified in the Agreement, to be capped at

$300,000. If plaintiffs initiate proceedings to enforce the Agreement and the Court finds that the Secretary has not complied with the Agreement, however, plaintiffs may seek the payment of additional fees, costs, and expenses in connection with that enforcement that will not be subject to the above cap.

### IV.   APROVAL OF SETTLEMENT AGREEMENT

#### A.   Procedures for Settlement Approval

Federal Rule of Civil Procedure 23(e) requires that a settlement agreement be approved by the Court before a class action can be dismissed.  Preliminary approval is the first step in a two-step process required before a class action may be settled.  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).  For preliminary approval, a court evaluates the fairness of the settlement prior to notice.

After preliminary approval, a notice is published to class members informing them of their right to file written objections to the proposed settlement and to appear at a fairness hearing. At the fairness hearing, the Court considers any objections and makes a final determination regarding fairness.  If the Court approves the settlement, judgment is entered.

#### B.   Legal Standard for Preliminary Approval of Settlement Agreement

Before approving a class settlement, the Court must determine whether the settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. (23)(e)(2).  For preliminary approval the court considers "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re NASDAQ Market-Makers Antitrust*

*Litig.* at 102 (citing Manual for Complex Litigation (Third) § 30.41 (1995)); *accord In re Initial Public Offering Securities Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). *See also Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 355 & n.7 (E.D.N.Y. 2006) (listing the above factors for preliminary approval and noting that the nine "*Grinnell* factors" used by courts in the Second Circuit are logically applied in the final approval step when assessing a settlement after the fairness hearing has been held.)

    C.    <u>Analysis</u>

In this case, the extensive arm's-length settlement negotiations described above were serious, informed, and non-collusive. The Agreement was negotiated by experienced counsel for both parties and lasted approximately nine months. Counsel for both parties believe that the resulting Agreement is fair, adequate, and reasonable. The negotiating teams possessed in-depth knowledge of the applicable statutes, regulations, and policies, as well as expertise in the services and care settings affected by this action.

Negotiations were clearly non-collusive, as there were many disagreements on issues both major and minor. But the parties were able to develop satisfactory resolutions to those disagreements. The settlement negotiations have produced an Agreement that is agreeable to both parties, and neither party believes there are deficiencies. The Agreement sets forth a comprehensive plan for clarifying coverage standards for the SNF, HH, and OPT benefits when a patient has no restoration or improvement potential but when that patient needs skilled SNF, HH, or OPT services to maintain his or her current condition or to prevent or slow further deterioration, communicating those clarifications, and monitoring the results of the clarifications. Plaintiffs' counsel believe that the Agreement will improve access to needed services for thousands of Medicare

beneficiaries and reduce inappropriate denials, terminations, or reductions of services. Defendant's counsel believes that the clarifications and other actions to be taken pursuant to the Agreement will minimize any potential confusion regarding those coverage standards under the law.

The Agreement does not grant preferential treatment to class representatives or segments of the class. Class members have a fair opportunity for re-review of their claims, with different time periods for identifying themselves depending on when their denied claims became final. Only one person, named plaintiff Glenda Jimmo, has priority in re-review of her individual claim, which will not affect the rights of any other class member. Counsel for both parties believe that the Agreement is in the best interest of the parties and the public.

In light of these factors, the terms of the proposed Agreement are fair and thus falling within "the reasonable range of approval" at this preliminary stage. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. at 102 (citation omitted).

### V.     PROPOSED NOTICE

Rule 23(e) of the Federal Rules of Civil Procedure requires that notice of any proposed class action settlement be provided to class members in a manner directed by the Court. The class notice should set forth: (1) a summary of the proposed settlement agreement or a copy of the agreement, (2) the time, date and place of the fairness hearing; and (3) the procedure by which objections to the settlement may be made. *See Manual for Complex Litigation, Third* § 30.41 (1997). The proposed notice meets these requirements.[2] The notice summarizes the key provisions of the Agreement, reviews the history of the litigation and settlement, outlines reasons for the settlement, provides

---

[2] The Notice is attached to the Joint Motion as Exhibit A.

information about the time, date, and place of the fairness hearing, and details the procedures for filing objections to the Agreement.

The parties have agreed upon public notice. Plaintiffs' counsel will post the notice on the website of the Center for Medicare Advocacy and Vermont Legal Aid, and publish the notice in their alerts and publications for elder law advocates. The National Health Law Program and the National Senior Citizens Law Center, both of which advocate for low-income seniors, have informed plaintiffs' counsel that they will post the notice on their websites. All seven of the original organizational plaintiffs have agreed to publish the notice on their websites. Combined, these websites and publications reach thousands of viewers and subscribers, including elder law attorneys, legal services attorneys, legislators, journalists, and law school libraries. Such notice should reach numerous attorneys and advocates who can assist in bringing the settlement to the class members' attention.

## VI.     CONCLUSION

The proposed Settlement Agreement meets the standards for preliminary approval under Fed. R. Civ. P. 23(e). Therefore, the parties jointly request that the Court enter an Order granting preliminary approval to the proposed Settlement Agreement, authorizing notice to the class and setting a fairness hearing.

Dated: November 13 , 2012                     Respectfully submitted,

                        STUART F. DELERY
                        Acting Assistant Attorney General
                        TRISTRAM J. COFFIN
                        United States Attorney
                        SHEILA M. LIEBER
                        Deputy Director, Federal Programs Branch

   */s/ Steven Y. Bressler*
STEVEN Y. BRESSLER (D.C. Bar #482492)
M. ANDREW ZEE (CA Bar #272510)
Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue NW
Washington, DC  20530
Telephone:  (202) 305-0167
Fax:  (202) 616-8470
Email:  Steven.Bressler@usdoj.gov

*Counsel for Defendant*


   */s/ Judith Stein (by permission)*
JUDITH STEIN
Executive Director
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
jstein@medicareadvocacy.org
(860) 456-7790
Fax: (860) 456-2614

Dated:            November 13, 2012

   */s/ Gill Deford (by permission)*
GILL DEFORD
Director of Litigation
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
gdeford@medicareadvocacy.org
(860) 456-7790
Fax: (860) 456-2614

Dated:            November 13, 2012

   */s/ Michael Benvenuto (by permission)*
MICHAEL BENVENUTO
Director, Medicare Advocacy Project
Vermont Legal Aid
264 North Winooski Avenue

11

Burlington VT, 05402
mbenvenuto@vtlegalaid.org
(802) 863-5620

DAVID J. BERGER
MATTHEW R. REED
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94306
DBerger@wsgr.com
MReed@wsgr.com
(650) 493-9300
Fax: (650) 493-6811

*Counsel for Plaintiffs*